May it please the Court, my name is Amanda Sampson, and I'm here with Ms. Van Amburg, appearing on behalf of the Pascua Yaqui tribe and Appellant Nielsen. You'll have to keep your voice up, the acoustics here are difficult. Okay, thank you. Also here is Ms. DeLorde on behalf of the United States of America, representing Appellant Anchondo. If you have specific questions for the United States, Ms. DeLorde would be happy to answer those, otherwise I'll be arguing for the appellants. I'd like to reserve three minutes for rebuttal. This Court has jurisdiction to hear this appeal, which is properly before the Court, pursuant to 28 U.S.C. 1291 and 2253, and United States v. Willis and Brittby Senior Valley Unified School District. The issue before the Court is one of statutory construction. Is the word offense in Section 13027 of the Indian Civil Rights Act ambiguous? It is not. There are three main areas to be discussed today. First, the statute is not ambiguous, but plain on its face. Second, the legislative history is not helpful because the statute is plain and because the legislative history does not discuss the language that's at issue. And finally, the district court addressed a policy concern through its order, which is error. The tribal court sentence was lawful in this case, and the district court's grant of the writ was in error. First, the plain language of the statute. The language of 1307 of the Indian Civil Rights Act reads that an Indian tribe shall in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year. It's well settled that the starting point of statutory construction is the language of the statute itself. If the language is unambiguous, that ends the inquiry, and that's found in Barnhart v. Sigmund Kohl. Offense has a well-settled meaning at law in addition. As the Supreme Court has repeatedly held in cases such as NLRB v. Anne Max Kohl, Perrin v. United States, and United States v. United States-Gypsum, where Congress uses terms that have accumulated a settled meaning at law, courts must infer, unless the statute said otherwise, that Congress meant to incorporate that established meaning. Sotomayor, does the recent Supreme Court decision in Tinkleburg affect any of the analysis here, as you see it? Your Honor, no, it doesn't. The – in Tinklenburg, the legislative history refers to automatically excludable delay. So you have a specific reference to that language. And in addition, the Supreme Court didn't want to limit its own prior precedent, which discussed automatic application in that case. As the district court correctly noted in the Bustamante v. Valenzuela case, which was a case arising from the Pascua Yaqui tribe also and involving the same issue as this case, but in that case the District of Arizona denied the writ, the Supreme Court has taken the – that court stated that the Supreme Court has taken the consistent position over many years that offense refers to a discrete criminal violation. For example, in 1852 in Moore v. Illinois, the court found an individual by one act had committed two offenses, and in 1911 in Ebling v. Morgan, a defendant who cut into multiple mailbags in the same transaction had committed multiple offenses. So in short, the term as construed by the Supreme Court over many years specifically contemplates multiple offenses arising out of the same transaction of events. The fact that the offenses arose out of the same set of facts doesn't preclude them from being separate offenses subject to separate punishments. And we can find that in U.S. v. Dixon, Ohio v. Johnson, Albert Nazeby, United States. And then to the legislative history. In this case, the language of the statute is clear and unambiguous. And it's well settled that where the language of the statute is unambiguous, judicial inquiry into the legislative history is not necessary or helpful. Kennedy, Has this challenge ever been brought up in a Ninth Circuit court case before? This specific challenge, no, it has not. And any other circuit? No. Okay. However, if the Court finds ambiguity in the statutory language, it can certainly look to the legislative history. But in this case, the legislative history doesn't bolster Apelli's argument in any way. First, the history is completely silent with respect to what Congress meant by offense or any one offense. And as the Supreme Court held in Richland v. Chertoff, legislative history that doesn't address the question presented, much less answer it, is not persuasive. Whereas here, the legislative history is silent on the issue, the district court should not have relied on that history. Miranda relies also heavily on legislative history that's testimony. At hearings held between 1961 and 1965, much of this testimony is not from the lawmakers themselves, but from individual Indian tribal members and from tribal representatives, tribal leaders. And since the Indian Civil Rights Act didn't actually pass until 1968, and the language of the 1968 Act was different than that from the failed 1965 Act, the testimony itself is of little or no value. Testimony from or statements from people other than the lawmakers themselves is simply not probative of what the Congress thought they were enacting. For that reason, the Supreme Court in Kelly v. Robinson avoided relying on comments at hearings, as the comments are not representative of what the legislature believed. Sotomayor, it has, Your Honor. And is it material to this? Although the 2010 Tribal Law and Order Act amendments are not at issue in this case, even so, they confirm the interpretation of offense that exists in the 1968 version. The fact that the amendment defined offense consistently with appellant's interpretation, a violation of a criminal law is how it's defined, is entitled to great weight under Red Lion v. Broadcast Red Lion Broadcasting v. FCC, where the Supreme Court stated that subsequent legislation declaring intent of earlier of an earlier statute is entitled to great weight in statutory construction. And also in this circuit's SEC v. Clark. So that what we the way that we interpret this statute will be for this day and train only, essentially? I'm sorry. Could you repeat? If the statute has been amended, then the effect of our decision is only as the case is before the amendment. Is that correct? That's correct. Yes. Further, Miranda is making a policy argument here. Essentially, Miranda argues that it would be a better policy if the Indian Civil Rights Act didn't allow sentencing the way that it facially allows sentencing. Policy matters are matters for Congress, not the courts, and Congress made the decision to word the Indian Civil Rights Act the way it did. So it wasn't for the district court to choose different language. The Supreme Court has repeatedly held that policy concerns should be addressed to Congress rather than to the courts. In Lewis v. City of Chicago and Alivi Federal Bureau of Prisons, which stated that we are not at liberty to rewrite the statute to reflect a meaning that we deem more desirable. Under these circumstances, the district court's reliance on the legislative history was in error, and the court essentially rewrote the statute. Adding words in to the statute improperly. It's well settled that courts should not read words or elements into a statute that don't appear on the statute's face. And in this case, that's what, as the district court in the District of Minnesota, they had the Spears v. Red Lake band of Chippewa Indians. That's one of the few other cases that has addressed this issue. So your – I take it your position would be that this Indian court or Indian tribe would be held accountable if Miranda, instead of just – not just, but instead of assaulting two persons, had been in a meeting and had run around and shoved the scissors or whatever sharp instrument she had, the knife, at 50 people, and 50 counts were returned, that she could be held for 50 years by the Indian tribe. Well, Your Honor, that's not the case that we – that the court has to decide on. Will you answer my question? As long as there are separate offenses. Don't you think there's some intent by Congress in the Indian Civil Rights Act to say that the Indian tribe, as respectful as Congress is of the Indian tribe, should not put any person in jail for more than one year because their kind of trials that they have do not really accord with the full concepts of due process, which any other garden variety assaulter or thief would get in a non-tribal court? No, Your Honor, the Congress addressed that in enacting Indian Civil Rights Act by offering, you know, all the various protections that it does offer in the Indian Civil Rights Act, which could be raised. In this case, it's only the sentencing provision that is raised. And so, you know, while that's not before the court – Well, why do you think Congress said no Indian tribe can put someone in jail for more than one year for an offense? Well, it's – that is a limitation on the tribe. Certainly, it is if a person commits one crime, a murder – Murder first. They can only – murder first, but they can only get one year. One year. They just get one year. So it is – it's a serious limitation on tribes. And Congress legislated with the knowledge of what offense means and what that phrase would mean. So as I was saying, the Spears court did read language into the statute, knowing that no Indian tribe – this is what they would have the statute read. No Indian tribe in exercising its powers of self-government shall impose for conviction of all criminal offenses arising out of the same criminal transaction any penalty or punishment greater than a cumulative total of one year. And that's just not what the statute says. It's – the Supreme Court in Bates v. U.S. expressed its reluctance to read words into a statute that don't appear on its face. And also in Dean v. U.S., the court would not read a knowingly and intentionally element into the statutory language. Further, even under Miranda's interpretation, multiple years could be imposed. The district court in Bustamante v. Valenzuela acknowledged that the tribes would be free to impose years of punishment as long as the crimes weren't part of the same criminal transaction. So with that in mind, Miranda's single criminal transaction test simply doesn't make sense. It would also lead to absurd consequences where you would have the word offense meaning one thing in an – in an Indian jurisdiction and something entirely different in a Federal or State jurisdiction, which in the case of the Pascua Yaqui tribe is literally five minutes away in Tucson, so. In conclusion, the NE1 offense language of the Indian Civil Rights Act is not ambiguous and it clearly allows for the sentencing that was imposed in this case. The legislative history is completely silent as to the – as to the issue, and thus the plain language of the Indian Civil Rights Act should govern. Thank you. If you want to reserve three minutes. Yes. Thank you. Good morning. May it please the Court. I'm Daniel Kappen, representing Beatrice Miranda. With me at counsel table is Keith Helzendegger, who has also been involved in the case. I'd like to address a few of the questions the Court has asked. The Tinklenburg case of the Supreme Court is relevant because it demonstrates the fallacy of the analytic approach that the Respondents are suggesting this Court must observe, which is to take one word in the statute. It is a crucial word, but to basically say this word has only one conceivable meaning and that's all we're going to think about. That's what the Sixth Circuit did in the case that was reversed in – well, actually, it was – that analysis was rejected. I believe it was affirmed for totally separate reasons. But the Supreme Court said it's insupportable to look at the – in that case, the Speedy Trial Act, and take one word and say it only has one conceivable meaning when all you have to do is pull out a dictionary and see there are different meanings, and the different meanings have significant consequences. Kennedy. Any dictionary define offense as – does any dictionary define offense as two or more acts? Wessler. The Black's Law Dictionary, a legal dictionary, would typically define it as a crime. A civilian dictionary, as we've cited in our 28J letter, like the Oxford English Dictionary, would include the crime definition but also typically include things that would refer to acts or conduct, like a transgression, a wrongful act, something like that, which could be multiple crimes technically. So the definitional approach doesn't give you any one conceivable meaning. That approach the Sixth Circuit took that the Supreme Court disapproved strongly of in Tinklenburg cannot be – survive even the minimal scrutiny of pulling out a dictionary. Interestingly, now I understand that there is this rationale that, well, we should just look at Black's Law Dictionary because this is a statute that talks about criminal prosecution. And the flaw in that is that the same law that the respondents used and that the Bustamante Court used to justify applying that to approve of the stacking practice, what we call the stacking practice, shows that it's false. You don't need to look any further than the key case in the double jeopardy context upon which they rely heavily. The Blockberger case, to see that that's wrong. In Blockberger, the Supreme Court said that one act can give rise to multiple crimes under multiple different statutes. There are multiple offenses if one crime is one offense. And at the same time, if the test of Blockberger is flunked, if they do not each include non-exclusive elements or non-shared elements, that is one offense within the meaning of the same offense clause of the double jeopardy clause of the U.S. Constitution. So in other words, Blockberger says you can have multiple crimes and still one offense under the double jeopardy clause. So you don't need to look any further than the case law. They cite to show that there is clearly ambiguity in the term offense and the basic rationale of their argument, which is that you just simply need to settle on one possible definition and not look further than that is flawed. Now, the Respondents have, interestingly, in responding to the question about Tinklenburg, Respondents have acknowledged that there was legislative history that was relevant to the meaning of that term. Well, if it was relevant to the meaning of the term in Tinklenburg, there's no reason it shouldn't be relevant to the meaning of the term in this case with respect to the Indian Civil Rights Act. And in case there's any question about that, the Court need only look to the major U.S. Supreme Court decision dealing with this exact statute, the Indian Civil Rights Act, which is Santa Clara Pueblo v. Martinez. The Supreme Court exhaustively discussed the legislative history of the Indian Civil Rights Act in the Santa Clara Pueblo decision. They looked at hearings. They looked at reports. They looked at testimony. They looked at all sorts of things. And there are long footnotes and lengthy discussions of legislative history in the Santa Clara decision. So the idea that looking at testimony is inappropriate, that they have suggested is refuted by the Santa Clara decision of the Supreme Court. The idea that legislative history should not be consulted at all is refuted by the Santa Clara decision. And the suggestion that the legislative history is, quote, unquote, silent if no legislator or there's no report that specifically addresses the precise issue in question, and therefore is irrelevant, is refuted by the Santa Clara Pueblo decision. The issue in Santa Clara was, does ICRA, the Indian Civil Rights Act, imply a private right of action against tribal officials for civil rights violations? And the fact of the matter is, after conducting the exhaustive survey of the legislative history that it did, the Supreme Court did not identify any place in that history where there was any clear, precise statement about that issue of implied private rights of action. The Supreme Court did not conclude, based upon that, that the legislative history was, quote, silent. They considered it very exhaustively, and they used it as a major basis of their decision. And the Court should do the same thing in this case. In a nutshell, it would simply be inappropriate to blind, for the Court to blind its eyes from the exhaustive legislative history that we've cited in our response brief. Kennedy. Pardon me, counsel. Let me ask you this. If this were a garden variety battery case that occurs down on Mission Street at 242, as we used to call it in California, there would be two counts, wouldn't there? There would be a count for each of the persons who she threatened? Probably so. You couldn't put both of those assaults on one count. You'd have to have two counts. Probably so. So, therefore, there would be two offenses. Depending on how you define offense, I think that's... There would be two offenses out of one transaction, wouldn't there? There would be – well, there would be two counts. And if you're defining offenses as counts, again, I think there is a lot of ambiguity in offense. But there would be – the person could be punishable for two counts of the assault offense. So it's important to recognize that the sentencing cap in the Indian Civil Rights Act is a unique thing. It's something – there's no reference, there's no analog for it in, you know, the State and Federal laws that apply outside of reservations. It's enacted for a specific purpose, and I think Your Honor put your finger exactly on what that is. Congress obviously was concerned, and the legislative history is exhaustive on this, and the Santa Clara decision is also definitive on this. Santa Clara says... Well, California used to have municipal courts, and they couldn't send anybody to jail for more than one year per offense. That's right. Okay. That's right. But if this were tried in San Francisco, it'd be a year for one and a year for the other. You wouldn't necessarily sentence just for one offense. You'd sentence for both counts. Well, I wasn't aware of that. It would be to see whether that was within the meaning of the intention of the legislators who passed that. You'd need to look at the context and the history behind it and et cetera. So in that particular case, the immunity court could send somebody to jail for two years. If the limit per count were a year and there were two victims, probably so. But I think Your Honor put your finger on the flaw in taking the same rationale just in respect to multiple victims and applying it here. What if there were 50 people that Beatrice Miranda was shaking her fist at and shaking a knife at and saying horrible things to? You know, you could have a 50-year sentence, and you saw that there was no denial. There was no denial from respondents that a person could be in tribal court where, in the Supreme Court observed in Santa Clara, the most serious abuses of power, of power by tribal governments that this Congress found when they were enacting the Indian Civil Rights Act were in the criminal justice context. And the Supreme Court struck a balance a little more in favor of sovereignty in Santa Clara because that was about civil cases. And they specifically said this is partly because this is a civil matter. The most serious abuses behind ICRA and the limitations on tribal governments were in the criminal justice context. And how can it plausibly be asserted that you should adopt, that you must adopt an interpretation of this statute that would allow for a 50-year sentence when Congress was clearly concerned about the procedural protections that were not provided in tribal courts? The question was raised about the Tribal Law and Order Act, which was just enacted. Well, first of all, in terms of who's raising policy arguments, the policy arguments have been coming, I submit, from the respondent's side. The suggestion is there's a serious crime problem on reservations. They need this power to stack sentences to address it. The Federal Government is not taking the prosecutions referred to it. Well, I will be the last one to deny that those are serious issues. They are serious issues which are to be addressed in our democracy by the elected representatives of the people, and, in fact, they have been addressed. The issue has been addressed by a comprehensive new revision of these laws, the Tribal Law and Order Act, which includes restrictions and procedural requirements on Federal and tribal interaction, and Congress has tried to address this issue. So the issue that, well, this is a serious limitation, as Respondents put it, and therefore the court should be concerned, those things are moot and were never the business of a court in the first place. Now, as far as the other thing to note about the Tribal Law and Order Act, the suggestion has been made that because there's a portion of the Tribal Law and Order Act which defines an offense now as a violation of a criminal statute, that means that's what they must have meant before. Well, take a look at the entire Act. The Act also imposes strict limitations, including a one-year sentence limitation that's connected to a criminal proceeding. So Congress has shifted the work of capping sentencing authority from the word offense to a criminal proceeding, which has not yet been defined, but presumably that's going to have to do with an individual case which could involve many counts, many different criminal violations of different criminal statutes. So it's really, it's not very plausible to say, well, Congress must have meant that the stacking could go on to any extent Tribes want to do it, when after, at the same time that they defined it that way, they have placed a strict cap connected to a criminal proceeding, regardless of how many offenses the criminal proceeding might involve. Or cases that might be consolidated. Well, yes. Multiple cases that get consolidated. That's tomorrow's issue. Exactly. It's tomorrow's issue, and the meaning in that context hasn't been addressed. Perhaps someday that will arise and we'll have to address that. Well, how has the statute been amended that will affect this issue? Well, it's a... I'm just wondering what tomorrow is. Okay. So if you look at the current version of 25 U.S.C. Section 1302, it says that there's a limitation of one year for any one offense. There's a definition at the end that says one offense is a violation, is a violation of a criminal law. But then there is a bunch of further things which say, for one thing, they say that for one offense, one violation of a criminal law, there can be sentencing up to three years in limited circumstances, where it's a repeat offender or where there's an analog in State and Federal law that would be a felony. But it also says in subsection C that in any criminal proceeding, there's still a cap of one year. With that regard to how many offenses are involved, there's a cap of one year. And to exceed that cap, the tribe can only exceed that cap of sentencing authority if they have a counsel provided according to the Sixth Amendment requirements, et cetera. So in other words, there's a strict regulation. So Congress has not simply said... You can get around that by bringing two separate actions. That's right. That raises the question that your colleague has raised. The Court might not grant a motion to join. Well, those issues will be raised if that – if and when that situation arises. But the point I'm trying to make is Congress has attempted here not to just lift the cap and say – and there's nothing about this that suggests that you can look at this and say, this is what we meant all along. The stacking can go on to the extent – to whatever extent you want. What they're saying is we're imposing a new package of restrictions. But we don't have those restrictions, do we? No. On the case before us? No, no, no. Absolutely not. Judge Schroeder is correct. The statute that we're talking about now was enacted when? 1968. And we have no authority on this? I don't – what's been going on? What's been the practice? What's been the practice in tribal courts? My understanding from everything I've heard dealing with people who practice in tribal courts is that stacking has gone on regularly for a long time, for decades. And, you know, look at the amicus briefs that were filed by two different tribal governments in this case. They say, yes, we stack whenever we think it's appropriate, and we need the power to stack because the feds aren't doing their job under the Major Crimes Act. Your Honor, Judge Bea mentioned the point about what if it's murder in the first. Well, murder in the first is in the Major Crimes Act. Congress specifically said that's a Federal responsibility. And again, I understand the tribes have had a concern, a serious concern, that the feds are declining to prosecute. Again, we're the last ones to deny that was a serious issue. But it's an issue for the democratic process to resolve legislatively, and that has happened. There's a suggestion made that this doesn't make sense because a person could still get a multiyear sentence in certain circumstances. And the Bustamante Court talked about this. Well, the Indian Civil Rights Act places its restrictions on an offense, not on a person. And in any case, if a person commits a lot of offenses that take place over a long period of time, they become what you call a repeat offender. It's perfectly rational. It's not absurd. It's rational to say that person is more of a danger to society. They're a persistent lawbreaker. It wasn't just a temporary lapse in judgment. The Federal sentencing guidelines have enhancements for career offenders. There are three strikes laws that take the same rationale. So there's nothing absurd about that. And it's a hypothetical situation unlikely to happen that over such a long period of time the limitations periods would all still be running, and that kind of prosecution would happen at all. And the last thing I just want to address quickly, there was an argument made just now that there's an absurd result because in different courts the cap would have different meanings. It's all moot now because of the Tribal Law and Order Act. But that doesn't hold water because the same law applies. The Indian Civil Rights Act governs proceedings in tribal courts, and it governs proceedings in Federal courts just the same. So it's not the case that there would be two different standards. The Supreme Court in Santa Clara specifically said that the tribal courts provide an appropriate venue for the vindication of the civil rights that are set forth in the Indian Civil Rights Act. So the presumption is the law applies fully there. And Ms. Miranda did raise the same exact issue here in tribal court, and the tribal court addressed it. There are no questions. Thank you. Your Honor, it's true that if this happened off the reservation, there would be numerous charges imposed, and the length of the sentences probably would be much greater. But there's no indication that Congress intended to limit tribes in this way. There's no indication.   There's no reason to believe that Congress would have intended to limit tribes in that way without expressly doing so. There could have been a 50-year sentence imposed in this case, or maybe not in this case, but in a case. And that didn't happen. And we can look at the reasonable sentence that the tribal court imposed in this  in this case. As an example, as for stacking, as Mr. Kaplan refers to it, that's just exactly what happens in any other jurisdiction in this country. And the fact that this is the first case that has come up to you is telling. You know, tribal courts aren't you haven't heard about this before because they're not going crazy out there. So, you know, that's one point. The limit that we're talking about here is a limit as to the sentence, in your view, for each count or each of the, that's what offense means, within a transaction. And I, and the Major Crimes Act makes it clear that for certain offenses that are heavy offenses, they have to be tried in federal court. So we have this in between of situations where higher sentences can be imposed, but the offense itself is still a relatively minor offense. Is that kind of how we are? So if you involve more people, you may get a higher sentence. Is that the way you see it? But the offense has to be one where the, each count has to be maxed out at a year? If I understand your question. I'm trying to get at the structure as you see it. The structure? Well, in this case, for example, Ms. Miranda was charged with aggravated assault, which would be under the Major Crimes Act. So the federal government could, in fact, still take this case if the statute of limitations hasn't run out. Right. Are there cases where there's exclusive jurisdiction in the federal, in the federal court? No. The only limit. They're separate sovereigns, and so they could be, they could both, both address that crime. So I see I'm out of time. Okay. Thank you. Thank you. The case just argued is submitted for decision. Before hearing the last case, we'll take a 10-minute recess. All rise.
judges: Sammartino, Schroeder, Bea